JOHN J. SHAEFFER (SBN 138331)
JShaeffer@FoxRothschild.com
MEEGHAN H. TIRTASAPUTRA (SBN 325572)
MTirtasaputra@FoxRothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:  310.556.9828

Attorneys for Plaintiff Riot Games, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIOT GAMES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BETTERMEANT, INC., a Delaware corporation; and DOES 1-50,<br><br>Defendant. | Case No. 2:23-cv-3505<br><br>**COMPLAINT FOR:**<br><br>**1) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br><br>**2) TRADEMARK DILUTION (15 U.S.C. § 1125)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Riot Games, Inc. ("Riot Games" or "Plaintiff") brings this Complaint against Defendant Bettermeant, Inc. ("Betterment" or "Defendant") for (i) federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, *et seq.* and (ii) trademark dilution in violation of 15 U.S.C. § 1125 and alleges as follows:

## INTRODUCTION

1.     How does a struggling underfunded tech startup distinguish itself in the marketplace? Betterment's answer to this was to change its name to one of the most popular free-to-play first-person shooter video games in the world.

2.     Since at least June of 2021, Betterment has been willfully and

145438976.1

intentionally trading on the goodwill and popularity of one of Riot Games's most popular games, Valorant, by branding itself and operating as Valorant Health. While initially doing business by its company name, Bettermeant decided to rebrand as Valorant Health *knowing* that the word "Valorant" was globally associated with Riot Games and that Riot Games was and continues to be the exclusive owner of all trademarks registered with the United States Patent and Trademark Office (the "USPTO") that use the word "Valorant."

3.      Riot Games takes no issue with the mission of Bettermeant to provide healthcare access to others and, in fact, commends the work that Bettermeant is aiming to do. However, to do so on the backs of those at Riot Games who spent enormous effort making famous the new brand "Valorant" runs against the grain of Bettermeant's purported moral compass, especially when it causes confusion amongst Riot Games's players, which it already has.

4.      Even if Bettermeant believed before it changed its name to Valorant Health that its target consumers, military veterans and their families, ultimately would not confuse its online health care platform with Riot Games's insanely popular Valorant, and ignoring that some would be disappointed that there is no access to the game on Valorant Health's website, Bettermeant knew that coopting the made-up Valorant name would direct potential customers to its website, a cheap way to gain an illicit advantage over its competitors.

5.      Bettermeant's decision here constitutes initial interest confusion, at the very least, which violates the Lanham Act. Since Bettermeant admits it knew of Riot Games's Valorant at the time of its rebranding and chose to use the name anyway, it acted intentionally in a manner that can render this case exceptional. Bettermeant knew, or should have known, of its duty to avoid consumer confusion in any of its forms, and the Lanham Act frowns on the efforts to misappropriate the goodwill of another. Bettermeant must change its name, something it can do now voluntarily, or await a court to order it to do so.

**THE PARTIES**

6.     Plaintiff Riot Games, Inc. is a corporation organized pursuant to the laws of Delaware with a principal place of business in Los Angeles, California. Riot Games is one of the world's leading video game developers and international Esports operators, known for its premier game, League of Legends, and its Esports counterpart, the League of Legends World Championship. More recently, Riot Games has garnered even more popularity with the June 2020 release of its first-person shooter game, Valorant. Most importantly, however, Riot Games is known amongst its loyal players as always putting player experience first and above all else, which is what compels Riot Games to bring this action.

7.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Bettermeant, Inc. was founded in 2018 and is a corporation organized pursuant to the laws of Delaware with a principal place of business in Berkeley, California.

8.     Plaintiff is informed and believes, and on that basis alleges, that Does 1-50 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants"). Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts. Plaintiff will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

**JURISDICTION AND VENUE**

9.     Pursuant to 15 U.S.C. §§ 1114 and 1125, this Court has subject matter jurisdiction over Plaintiff's claims for relief for violation of the Lanham Act.

10.     Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendant because it has extensive contacts with, and conducts business within, the State of California and this judicial district; Defendant has advertised and promoted its products and services in this judicial district; the causes of action asserted in this Complaint arise out of Defendant's

contacts with this judicial district; and because Defendant has caused tortious injury to Plaintiff in this judicial district.

11.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant has extensive contacts with, and conducts business within, the State of California and this judicial district; Defendant has advertised and promoted its products and services in this judicial district; the causes of action asserted in this Complaint arise out of Defendant's contacts with this judicial district; and because Defendant has caused tortious injury to Plaintiff in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### *The Meteoric Rise of Valorant the Video Game*

12.   From the moment Riot Games announced in March of 2020 a closed beta for a new game that it would call Valorant, the consuming public immediately identified this made-up name with Riot Games. Since its public release in June of 2020, Valorant has remained one of the most consistently played free-to-play video games on the internet and, more importantly for this case, has consistently been one of Google's top search terms, as reflected on the graph below from Google trends.[1]



Since Google trends show no public interest in Valorant before Riot Games's announcement, it is safe to say that all of this interest relates to public association of Valorant with Riot Games.

13.   Within the first month of its official release in June of 2020, Valorant reached an average active player count of 15 million. This number remains the monthly average of active players almost three years later, a feat only a handful of

---

[1] https://trends.google.com/trends/explore?date=2020-02-01%202023-04-15&geo=US&q=valorant&hl=en-US

4

145438976.1

video games have achieved.

14.    Valorant's release was also met with immediate praise from critics and recognition as a nominee of the Game Awards, for which it received nominations for Best Community Support, Best Multiplayer Game, and Esports Game of the Year in 2020, only months after its release. Valorant has been nominated for Esports Game of the Year by the Game Awards every year since its release and ultimately won in 2022. Valorant was also nominated by the BAFTA Awards for Best Multiplayer Game and EE Game of the Year in 2021.

15.    In November 2020, due to the overwhelming popularity of the game, Riot Games announced the first Valorant Champions Tour, an Esports tournament series, in which 10,000 teams ultimately competed. The Washington Post has slated the Valorant Champions Tour to become the "next big Esport."[2]

16.    Needless to say, Valorant has become a household name for millions of people across the world.

### *Riot Games's VALORANT Marks*

17.    Since the release of Valorant, Riot Games has extensively promoted Valorant through a variety of media outlets, including through its website; various gaming influencers on Twitch and YouTube Live; and social media platforms, such as Facebook, Twitter, Instagram, Tik Tok, Twitch, and YouTube. Screen captures of Riot Games's Facebook, Twitter, Instagram, Tik Tok, Twitch, and YouTube accounts for Valorant that were taken on May 3, 2023 are collectively attached to this Complaint as Exhibit 1. As can be seen from Exhibit 1, Riot Games's Facebook page for Valorant has over 1.4 million likes; the Valorant Twitter account is being followed by over 2.8 million Twitter users; the Valorant Instagram account has 1.2 million followers; the Valorant Tik Tok account has 1.3 million followers; the Valorant Twitch account has over 16.4 million followers; and Valorant's YouTube

---

[2] https://www.washingtonpost.com/video-games/esports/2022/07/25/valorant-partners-esports/

COMPLAINT

145438976.1

1    page has over 2 million subscribers. Riot Games has invested substantial sums in

2    media and related content to promote Valorant.

3        18.    To protect the investment in and to the brand, Riot owns the following

4    US trademark registrations for the mark VALORANT:

5            a)    Registration No. 6464856 for VALORANT in IC 25

6            b)    Registration No. 6450143 for VALORANT in IC 41

7            c)    Registration No. 6429735 for VALORANT in IC 09

8            d)    Registration No. 6397625 for VALORANT in IC 38

9            e)    Registration No. 6397624 for VALORANT in IC 20

10       19.    Riot also owns various design marks that utilize the Valorant mark:

11           a)    Registration No. 6286133 for VALORANT in IC 41

12           b)    Registration No. 6286132 for VALORANT in IC 38

13           c)    Registration No. 6286131 for VALORANT in IC 28

14           d)    Registration No. 6286130 for VALORANT in IC 25

15           e)    Registration No. 6286129 for VALORANT in IC 20

16           f)    Registration No. 6286128 for VALORANT in IC 18

17           g)    Registration No. 6286127 for VALORANT in IC 16

18           h)    Registration No. 6286126 for VALORANT in IC 09

19    (collectively, the "VALORANT Marks"). The registration certificates for each

20    registration are collectively attached to this Complaint as Exhibit 2.

21       20.    As of the date of this Complaint, Riot Games remains the exclusive

22    owner of all marks registered with the USPTO that include the word "Valorant."

23       21.    Since April 2020, Riot Games's use of the VALORANT Marks has been

24    extensive, continuous, and substantially exclusive.

25       22.    Riot Games has made, and continues to make, substantial investments

26    of time, effort, and money in the development, production, and promotion of Valorant

27    and the VALORANT Marks.

28       23.    The VALORANT Marks are unique and distinctive and, as such,

6

145438976.1

designate a single source of origin. Specifically, "valorant" is not a real word included in any English dictionary and was made famous only through Riot Games's efforts to achieve widespread fame for its game, Valorant, and the VALORANT Marks.

24.    As a result of Riot Games's efforts and use, the VALORANT Marks have come to be recognized by the public and members of the video game community as being associated exclusively with Riot Games and its video game, Valorant.

25.    Riot Games expends substantial effort and expense to protect the VALORANT Marks' distinctiveness in the marketplace and further extensively polices unauthorized use of the VALORANT Marks.

26.    The VALORANT Marks are a property right of incalculable value as they have, for the last nearly three years, enjoyed unquestionable fame as a result of the favorable general public acceptance and recognition.

### *Bettermeant's Willful Infringement of VALORANT*

27.    On June 2, 2021, more than a year after Valorant had been released, Bettermeant announced it was changing its name to Valorant Health after having operated under the name Bettermeant since its founding in 2018.

28.    In making this name change, Bettermeant hired a naming consultant, Tyler Doyle, to come up with some name options. Mr. Doyle was referred to Bettermeant through one of its investors who had previously engaged Mr. Doyle for a name change of his own company.

29.    While it's generally Mr. Doyle's practice to take about six weeks to develop a name, here it took Mr. Doyle only *one week* to come up with "Valorant." While Mr. Doyle coyly now claims not to remember where his inspiration came from, he conceded it's possible he may have heard of Riot Games's use in passing, which is not surprising since Mr. Doyle identifies as an avid gamer since the age of two, playing "about an hour a day."

30.    When Mr. Doyle presented Bettermeant's founder and CEO, Ahmed

145438976.1

Qureshi, with the name "Valorant," he also identified Riot Games's use of the name "Valorant." Mr. Doyle now defends his decision based on purported advice he received from an attorney, even though no detailed legal analysis of the purported advice he received exists.

31.     Bettermeant's decision makers were also well aware of Riot Games's prior use of Valorant. In fact, one of its principal investors who had experience going through a name change for his own company, expressed multiple concerns about the use of "Valorant" in the face of Riot Games's use of the name and suggested using "Salute" instead. Yet in the face of these potential conflicts identified by multiple people, Mr. Qureshi unilaterally chose "Valorant" and immediately acquired Valorant-related domains. *See generally* Ex. 3.

### The Trademark Trial and Appeal Board ("TTAB") Proceeding

32.     On May 31, 2021, Bettermeant filed its application (the "Application") to register the mark "Valorant" in international classes 9, 42, and 44. Ex. 4.

33.     Upon publication, Riot Games promptly contacted Bettermeant in the hopes of amicably resolving concerns over consumer confusion. Bettermeant, however, had no interest. As a result, Riot Games filed an opposition before the TTAB.

### Harm to Riot Games and the General Public Through Actual Confusion

34.     Bettermeant's use of VALORANT or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Bettermeant's goods and services, and is likely to falsely suggest a sponsorship, connection, license, or association of Bettermeant and Valorant Health with Riot Games and its video game, Valorant.

35.     Demonstrating beyond a likelihood of confusion, one Riot Games user has demonstrated ***actual*** confusion in the time that Bettermeant has argued that there would be no likelihood of confusion between its services under "Valorant Health" and Riot Games's services under "Valorant."

36.     On October 8, 2022, a member of the Valorant video game community visited Bettermeant's website at www.valoranthealth.com and submitted a help request that reads:

noreply@valoranthealth.com <noreply@valoranthealth.com>                    Sat, Oct 8, 2022 at 10:36 PM
To: support@valoranthealth.com

User ███████@gmail.com requested help with the following message. beacuse of light issue i was disconnected and i
got ban of 151 hours means 6 days . in my game my freinds were throwing . my id is PREDATOR YT #NHK

Ex. 5.

37.     When questioned in the TTAB proceeding about this email, Mr. Qureshi refused to admit that the email was meant for Riot Games and brushed it off as irrelevant:

Question:    When you read this email for the first time, what was your response to it?

Answer:      We didn't do anything.

Question:    What did Ryan tell you about this email when he showed it to you?

Answer:      That -- received an email that didn't seem like it was addressed to us.

Question:    When you read this email, who did you think it was supposed to go to?

Answer:      Not us. Didn't seem relevant.

Question:    Did you realize that maybe this was meant to go to Riot for the "Valorant" game?

Answer:      I thought that was a possibility.

. . .

Question:    Would you agree with me that this email demonstrates a negative effect on Riot's "Valorant" mark?

Answer:      No.

Question:    Well, it certainly doesn't demonstrate a positive one, right? I mean, the user got the company wrong, right?

Answer:      I – they're confused. That's all I could – I want to say

9

145438976.1

1                                        about that.

2                ***Bettermeant's Continued Infringing Use of VALORANT***

3          38.     Since its announcement in June 2021 of its rebranding as "Valorant

4 Health," Bettermeant has been continuously using and promoting "Valorant" in

5 relation to its goods and services, and it does so with the intention that people

6 remember it as just "Valorant" rather than "Valorant Health":

7
8     Question:     So all six names that Mr. Doyle proposed here all have "Health" at the back of them, right?

9     Answer:       Yes. If they're a healthcare company, yeah.

10
    Question:     So really you were choosing between the first words of each of these six choices, correct?
11

12     Answer:       Yes.

13     Question:     Okay. And those first words of each of the six choices are
14                  the distinguishing words of those proposed names, correct?

15     Answer:       Yes.

16     Question:     So when someone refers to your company, you would
17                  want them to remember the distinguishing word, like
18                  "Valorant" or "Foxtrot," correct?

19     Answer:       I suppose.

20     Question:     Do you ever refer to your company as just "Valorant" without the "Health" part?

21     Answer:       Yes.

22     Question:     Do your employees refer to the company as "Valorant"
23                  without the "Health" part?

24     Answer:       Yes.

25     Question:     Do your investors refer to the company as "Valorant"
26                  without the "Health" part?

27     Answer:       Yes.

28 *///*

COMPLAINT

145438976.1

39.     Bettermeant's continued use of "Valorant" has irreparably harmed Riot Games and the Valorant brand it has worked so hard to establish.

40.     Similarly, Bettermeant's continued use of "Valorant" has irreparably harmed the general public, which has an inherent interest in being free from the confusion, mistake, and deception actually caused by Bettermeant.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement

### 15 U.S.C. § 1114

41.     Riot Games incorporates by reference the factual allegations set forth above.

42.     Riot Games owns the VALORANT Marks and first used them in or about March 2020 when it announced the release of the Valorant video game, which immediately created significant buzz around the game before it was released on a limited basis in April of 2020 and then publicly in June 2020. Riot Games's March 2020 first use is more than one year prior to Bettermeant's first use of the VALORANT Marks in June 2021.

43.     Bettermeant's actions as described above and specifically, without limitation, its willful use of the VALORANT Marks in commerce to advertise, promote, market, and sell its goods and services throughout the United States including California, constitute trademark infringement in violation of 15 U.S.C. § 1114.

44.     Bettermeant's use of the VALORANT Marks will likely cause confusion as to the origin and authenticity of its goods and services and will likely cause others to believe that there is a relationship between it and Riot Games when there is not.

45.     Through its use of the VALORANT Marks, Bettermeant intended to, and did actually confuse and mislead Riot Games's consumers into believing, and misrepresented and created the false impression, that Riot Games somehow

11

145438976.1

authorized, originated, sponsored, approved, licensed, or participated in Bettermeant's use of the Mark.

46.    As a direct and proximate result of Bettermeant's wrongful conduct, Riot Games has been and will continue to be damaged. Riot Games has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the VALORANT Marks and injury and interference to its business and customer relationships, specifically as it relates to the Valorant video game and which can be demonstrated through the actual instance of confusion by a Riot Games consumer. Pursuant to 15 U.S.C. § 1117, Riot Games is also entitled to recover damages in an amount to be determined at trial, profits made by Bettermeant on sales of its goods and services, and the costs of this action.

47.    Furthermore, Bettermeant's actions were undertaken willfully with the knowledge that Riot Games was already using the VALORANT Marks and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Riot Games to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Dilution

### 15 U.S.C. § 1125

48.    Riot Games incorporates by reference the factual allegations set forth above.

49.    The VALORANT Marks are distinctive, unique, and famous as described above. Riot Games has invested significant time and money into the global promotion of the Valorant video game and the VALORANT Marks and, as a result of that effort, has achieved international notoriety around the name and the video game for which it is a title to. The VALORANT Marks are well known to the trade and members of the consuming public, who generally and readily identify the

12

145438976.1

1   Valorant video game and the VALORANT Marks with Riot Games.

2       50.    The VALORANT Marks are further distinctive and unique because

3   VALORANT is a not a word in any English dictionary and only became part of the

4   general public's common vocabulary due to the fame it obtained in association with

5   Riot Games's video game, Valorant.

6       51.    Betterment changed its name to Valorant Health more than one year

7   after Riot Games started using the VALORANT Marks and after it achieved an

8   extremely high degree of recognition among consumers.

9       52.    Bettermeant's conduct in the continuous promotion, advertisement,

10   offering for sale or distribution and/or the sale or distribution of its goods and services

11   under the VALORANT Marks or colorable imitations thereof constitutes dilution of

12   the VALORANT Marks, in violation of 15 U.S.C. § 1125, and such conduct dilutes

13   and/or tarnishes the distinctive quality of the VALORANT Marks by diminishing

14   Riot Games's ability to identify and distinguish its products.

15       53.    Riot Games has been actually damaged and deprived of the value of its

16   trademarks as commercial assets, in an amount to be proven.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

13

145438976.1

1

**PRAYER**

2      WHEREFORE, Plaintiff prays for the following relief:

3      1.      An injunction ordering Bettermeant and its officers, directors, members,

4 agents, servants, employees, and attorneys, and all other persons acting in concert or

5 participating with them, to:

6           (i)      cease all use and never use the VALORANT Marks, or any other

7 mark that includes any part of the VALORANT Marks, or any other mark likely to

8 cause confusion with the VALORANT Marks, in connection with the promotion,

9 advertising, offering for sale, or sale, of any goods or services;

10           (ii)      never represent, suggest in any fashion to any third party, or

11 perform any act that may give rise to the belief, that Bettermeant, or any of its goods

12 or services, are related to, authorized, or sponsored by Riot Games;

13           (iii)      cease all use of domain names that contain the VALORANT

14 Marks and any similar domain names, and never register any domain names that

15 contain any part of the VALORANT Marks;

16           (iv)      cease all use of any social media accounts and any similar

17 accounts or social media websites that use the VALORANT Marks or any part

18 thereof, and never register any social media account that contains the VALORANT

19 Marks or any part thereof;

20           (v)      withdraw the Application; and

21           (vi)      never apply for or seek to register any mark that is likely to cause

22 confusion with the VALORANT Marks.

23      2.      An order pursuant to 15 U.S.C. § 1116(a), directing Bettermeant to file

24 with the Court and serve upon Riot Games's counsel, within thirty (30) days after

25 service of the order of injunction, a report in writing under oath setting forth in detail

26 the manner and form in which Bettermeant has complied with the injunction.

27      3.      An order finding that, by the acts complained of above, Bettermeant has

28 infringed on Riot Games's trademarks in violation of 15 U.S.C. § 1114.

145438976.1

4.      An order finding that, by the acts complained of above, Bettermeant has diluted Riot Games's trademarks in violation of 15 U.S.C. § 1125.

5.      An order awarding Riot Games damages, pursuant to 15 U.S.C. § 1117, Riot Games's actual damages, as well as all of Bettermeant's profits or gains of any kind from their acts of trademark infringement, including a trebling of those damages.

6.      An order, pursuant to 15 U.S.C. § 1117, finding that this is an exceptional case and awarding Riot Games its reasonable attorneys' fees.

7.      An order, pursuant to 15 U.S.C. § 1117, awarding Riot Games all of its costs, disbursements, and other expenses incurred due to Bettermeant's unlawful conduct.

8.      An order awarding Riot Games such other relief as the Court deems appropriate.

Dated: May 8, 2023

FOX ROTHSCHILD LLP


/s/ Meeghan H. Tirtasaputra
John J. Shaeffer
Meeghan H. Tirtasaputra
Attorneys for Plaintiff Riot Games, Inc.

COMPLAINT

145438976.1

# Exhibit 1

**FACEBOOK:**





**VALORANT** ✔

⭐ 3.2 (446) ⓘ · Video Game

👍 Like

🔵 **Send message**    ···

Hi! Please let us know how we can help.

1,417,006 people like this

**TWITTER:**



Follow

**VALORANT** 🏅 🟥

@PlayVALORANT

A 5v5 character-based tactical shooter from
@riotgames. Available worldwide. ➡️ riot.com/41xrYqt

🏢 Video Game Company ⓘ
🔗 PlayVALORANT.com  📅 Joined February 2020

**18** Following    **2.8M** Followers

**INSTAGRAM:**



**TIK TOK:**



2

145454677.1

**TWITCH:**

 



**VALORANT**

**207.1K** Viewers · **16.4M** Followers

FPS     Shooter

**YOUTUBE:**



3

145454677.1

# Exhibit 2

# United States of America
## United States Patent and Trademark Office

# VALORANT

**Reg. No. 6,464,856**

**Registered Aug. 24, 2021**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 25: Hoodies; jackets; pants; pullovers; rainwear; shirts; sweat pants; sweatshirts; T-shirts; Tops; headwear

FIRST USE 7-6-2020; IN COMMERCE 7-6-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-982,367, FILED 02-20-2020







Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# VALORANT

**Reg. No. 6,450,143**
**Registered Aug. 10, 2021**
**Int. Cl.: 41**
**Service Mark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 41: Arranging and conducting live competitions featuring computer games and video games; arranging online computer game and video game competitions for interactive game players; entertainment services, namely, providing online computer games and video games; entertainment services, namely, providing a website featuring non-downloadable audio and video presentations in the fields of computer and video games; organizing live computer game, video game and e-sports competitions; providing a website featuring entertainment information about computer games and video games; providing online multiplayer interactive computer and video games; providing online video games; providing tracking of users of online interactive gaming services and matching online game players with other players of all skill levels

FIRST USE 3-30-2020; IN COMMERCE 3-30-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-982,257, FILED 02-20-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# VALORANT

**Reg. No. 6,429,735**
**Registered Jul. 20, 2021**
**Int. Cl.: 9**
**Trademark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 9: Downloadable computer game software; downloadable computer programs for use in tracking the status of various users of online interactive gaming services and for matching online game players with other players of all skill levels; downloadable screensaver and wallpaper graphics for computers, mobile phones, tablets; downloadable video game software; mousepads

FIRST USE 4-7-2020; IN COMMERCE 4-7-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-981,846, FILED 02-20-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# VALORANT

**Reg. No. 6,397,625**
**Registered Jun. 22, 2021**
**Int. Cl.: 38**
**Service Mark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 38: Broadcast and streaming of video game play and video game competitions over global communications networks, the Internet, and wireless networks; electronic transmission of data, graphics, images and messages among users of video game computers by means of wireless communications networks and the Internet; providing online communications links which transfer website users to other game related local and global web pages; providing online communication services for transmission of messages among video game computer users; video, audio and television streaming services; webcasting services via global and local computer networks

FIRST USE 4-7-2020; IN COMMERCE 4-7-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-803,567, FILED 02-20-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# VALORANT

**Reg. No. 6,397,624**

**Registered Jun. 22, 2021**

**Int. Cl.: 20**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 20: Figurines of plastic; figurines of vinyl

FIRST USE 12-4-2020; IN COMMERCE 12-4-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-803,562, FILED 02-20-2020







Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office



**Reg. No. 6,286,133**
**Registered Mar. 09, 2021**
**Int. Cl.: 41**
**Service Mark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 41: Arranging and conducting live competitions featuring computer games and video games; arranging online computer game and video game competitions for interactive game players; entertainment services, namely, providing online computer games and video games; entertainment services, namely, organizing live fan meetings and conferences with interactive gameplay between participants in the fields of gaming, video games and e-sports; entertainment services, namely, providing a website featuring non-downloadable audio and video presentations in the fields of computer and video games; fan clubs; organizing live computer game, video game and e-sports competitions; providing a website featuring entertainment information about computer games and video games; providing a website featuring electronic publications in the nature of comic books, graphic novels and stories featuring scenes and characters based on computer games and video games; providing non-downloadable online publications in the nature of comic books, graphic novels and stories featuring scenes and characters based on computer games and video games; providing online multiplayer interactive computer and video games; providing online trivia, tips and strategies for computer games and video games; providing online video games; providing tracking of users of online interactive gaming services and matching online game players with other players of all skill levels

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,655, FILED 03-02-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office



**Reg. No. 6,286,132**
**Registered Mar. 09, 2021**
**Int. Cl.: 38**
**Service Mark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 38: Broadcast and streaming of video game play and video game competitions over global communications networks, the Internet, and wireless networks; communication services for the electronic transmission of messages and data; electronic transmission of data, graphics, images and messages among users of video game computers by means of wireless communications networks and the Internet; providing online communications links which transfer website users to other game related local and global web pages; providing online chat rooms and interactive discussion forums for transmission of messages among participants in and players of computer and video games; providing online communication services for transmission of messages among video game computer users; video, audio and television streaming services; webcasting services via global and local computer networks; wireless electronic transmission of data, images and information

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,650, FILED 03-02-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**VALORANT**

**Reg. No. 6,286,131**
**Registered Mar. 09, 2021**
**Int. Cl.: 28**
**Trademark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 28: Action figure toys; battery operated action toys; bean bag dolls; board games; bobble head dolls; card games; Christmas tree ornaments and decorations; collectable toy figures; costume masks; electric action toys; fantasy character toys; flying discs; inflatable toys; kites; manipulative games; mechanical action toys; modeled plastic toy figurines; parlor games; party favors in the nature of small toys; party games; plush toys; positionable toy figures; puzzles; role playing games; stuffed toys; tabletop games; talking toys; toy figures; toy masks; toy vehicles; toy weapons; trading cards for games; video game consoles; video game machines; vinyl dolls

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,649, FILED 03-02-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,286,130**

**Registered Mar. 09, 2021**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 25: Beachwear; belts; coats; costumes for use in role-playing games; dresses; gloves; Halloween costumes; hoodies; hosiery; infantwear; jackets; loungewear; pants; pullovers; rainwear; scarves; shirts; shorts; skirts; sleepwear; socks; sweat pants; sweatshirts; sweaters; swimwear; T-shirts; tops; undergarments; underwear; footwear; headwear

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,647, FILED 03-02-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,286,129**

**Registered Mar. 09, 2021**

**Int. Cl.: 20**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 20: Figurines of plastic; figurines of vinyl

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,645, FILED 03-02-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- ***First Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,286,128**

**Registered Mar. 09, 2021**

**Int. Cl.: 18**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 18: All-purpose carrying bags; athletic bags; backpacks; beach bags; belt bags; book bags; canvas shopping bags; coin purses; cosmetic bags sold empty; courier bags; daypacks; drawstring bags; duffle bags; fanny packs; gym bags; handbags; key cases; kit bags; luggage; luggage label holders; luggage tags; messenger bags; parasols; purses; rucksacks; satchels; school bags; sports bags; suitcases; tote bags; travel bags; umbrellas; vanity cases sold empty; waist bags; walking sticks, wallets

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,643, FILED 03-02-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,286,127**

**Registered Mar. 09, 2021**

**Int. Cl.: 16**

**Trademark**

**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 16: Printed matter, namely, comic books, graphic novels, instructional leaflets in the field of computer games, manuals for video games, strategy guides for games; art prints; blank journal books; calendars; decals; gift wrapping paper; greeting cards; notebooks; novels; paper banners; postcards; posters; stationery; stickers; trading cards; wall stickers; writing implements

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,642, FILED 03-02-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office



**Reg. No. 6,286,126**
**Registered Mar. 09, 2021**
**Int. Cl.: 9**
**Trademark**
**Principal Register**

Riot Games, Inc.  (DELAWARE CORPORATION)
12333 W. Olympic Blvd.
Los Angeles, CALIFORNIA 90064

CLASS 9: Downloadable augmented reality software for playing video games; downloadable computer game software; downloadable computer programs for use in tracking the status of various users of online interactive gaming services and for matching online game players with other players of all skill levels; downloadable electronic publications, namely, comic books, graphic novels, magazines, manuals, and newsletters in the fields of entertainment and video games; downloadable mobile game software; downloadable screensaver and wallpaper graphics for computers, mobile phones, tablets; downloadable video game software; downloadable virtual reality game software for playing video games; recorded augmented reality software for playing video games; recorded computer game software; recorded computer game software and manuals in electronic format sold as a unit; recorded virtual reality software for playing video games; recorded video game software; recorded video game software and manuals in electronic format sold as a unit; video game cartridges; video game discs; audio speakers; battery chargers for laptops, mobile phones, tablet computers, and other USB-enabled portable devices; blank USB flash drives; computer keyboards; computer mice; decorative magnets; ear buds; eyeglasses; headphones; headsets for use with computers; monopods for handheld digital electronic devices, namely, cameras, mobile phones, tablet computers; mousepads; protective covers for mobile phones; sunglasses

PRIORITY CLAIMED UNDER SEC. 44(D) ON UNITED KINGDOM APPLICATION NO. UK0000347065, FILED 02-27-2020, REG. NO. UK0000347065, DATED 08-09-2020, EXPIRES 02-27-2030

The mark consists of the word "VALORANT" in stylized font underneath a stylized letter "V" comprised of two trapezoids in different sizes.

SER. NO. 88-816,641, FILED 03-02-2020



Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# Exhibit 3



## Forwarded Conversation

**Subject: cleared nams**
-----------------------

From: **Tyler Doyle** ███████████████
Date: Tue, May 25, 2021 at 5:43 AM
To: Ahmed Qureshi ███████████████████
Cc: Parth Bhakta ███████████████


Hi Ahemd,

I have good news for you! Valorant Health and Foxtrot Health both got Bs on the A-F scale that my lawyer assigns marks. That means that you have a good chance of successfully registering them as trademarks with the USPTO.

I'd recommend that you look at URLs for each (my favorite tool is [gandi.net](gandi.net)), and if you find one that you like, I can connect you with my lawyer to begin the registration process. I believe his fee is between $1000-$1500 to conduct the process from end-to-end, which can take a few months.

Thanks,
Tyler


--

**Tyler Doyle**

He/Him/His [(what's this?)](what's this?)

Naming Consultant, Founder at [TBD Naming](TBD Naming)
███████████████


----------
From: **Ahmed Qureshi** ████████████████████████
Date: Tue, May 25, 2021 at 7:35 PM
To: Tyler Doyle ████████████████
Cc: Parth Bhakta ██████████████████

1

Hi Tyler,

Thanks for the update! It is great to hear!

I am conducting an internal poll of the team to see if folks have feedback on the names. So far it seems to be leaning heavily towards Valorant Health!

It would be great to get connected with your lawyer to begin the process of registration.

**Very Respectfully,**
**Ahmed 'Eddie' Qureshi**
Founder & CEO, Bettermeant Health

████████████████████████████

Confidentiality Notice:  This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential, proprietary, and/or privileged information protected by law. If you are not the intended recipient, you may not use, copy, or distribute this restricted e-mail message or its attachments.  If you believe you have received this e-mail message in error, please contact the sender by replying to this e-mail and destroy all copies of the original message.

----------
From: **Tyler Doyle** ████████████████
Date: Wed, May 26, 2021 at 6:16 AM
To: Ahmed Qureshi ████████████████████
Cc: Parth Bhakta ████████████████

Wow, a typo in the title and your name! Sorry about that.

I'd recommend picking up a URL if you haven't already.

I'll connect you two briefly. Cheers!

----------
From: **Parth Bhakta** ████████████████
Date: Wed, May 26, 2021 at 8:47 AM
To: Tyler Doyle ████████████████
Cc: Ahmed Qureshi ████████████████████

Do you all think it's worth considering Salute Health in addition to Valorant Health?

What was the tm conflict there Tyler?

Salute seems more clear to me on a web search given the Riot Games brand around Valorant.

Parth
--
**Parth Bhakta**
Founder & CEO, Vivian Health

████████████████████████

2



**NurseFly is now Vivian Health**

----------
From: **Tyler Doyle** <span style="background:black">████████████</span>
Date: Wed, May 26, 2021 at 9:00 AM
To: Parth Bhakta <span style="background:black">████████</span>
Cc: Ahmed Qureshi <span style="background:black">████████████</span>

My lawyer gave Salute Health a C, so it's on the bubble. This is territory where less conservative lawyers would push for registration. Trevor can tell you more about the ins and outs—I'm not even remotely close to being a lawyer.

From a naming perspective, it's more on-the-nose military than Valorant, which feels more flexible for non-military applications.

----------
From: **Parth Bhakta** <span style="background:black">████████</span>
Date: Wed, May 26, 2021 at 9:13 AM
To: Tyler Doyle <span style="background:black">████████</span>
Cc: Ahmed Qureshi <span style="background:black">████████████</span>

It seems from the trademarks listed that none would really conflict (I am not a lawyer), but I I imagine we can get aggressive and still get the trademark especially for "Salute Health"

Just an option worth considering given the crowdedness of the web search for Valorant.

Parth

----------
From: **Tyler Doyle** <span style="background:black">████████</span>
Date: Wed, May 26, 2021 at 9:25 AM
To: Parth Bhakta <span style="background:black">████████</span>
Cc: Ahmed Qureshi <span style="background:black">████████████</span>

Yeah, it's all down to your appetite for risk, and your need for an immediate rebrand. It'll take months to know if you have the mark secured or not. If you can wait to rebrand until you know for sure, then a risky mark makes more sense. If you need to rebrand tomorrow, you might want to be more conservative.

----------
From: **Parth Bhakta** <span style="background:black">████████</span>
Date: Wed, May 26, 2021 at 9:37 AM
To: Tyler Doyle <span style="background:black">████████</span>
Cc: Ahmed Qureshi <span style="background:black">████████████</span>

Isn't riot games a lot more well capitalized to challenge the "Valorant" mark?

----------
From: **Tyler Doyle** ▮▮▮▮▮▮▮▮▮▮▮
Date: Wed, May 26, 2021 at 9:40 AM
To: Parth Bhakta ▮▮▮▮▮▮▮▮▮▮▮
Cc: Ahmed Qureshi ▮▮▮▮▮▮▮▮▮▮▮

The main consideration in these searches is likelihood of registration with the USPTO, not litigation.

----------
From: **Ahmed Qureshi** ▮▮▮▮▮▮▮▮▮▮▮
Date: Wed, May 26, 2021 at 10:49 AM
To: Tyler Doyle ▮▮▮▮▮▮▮▮
Cc: Parth Bhakta ▮▮▮▮▮▮▮▮

Hi All,

Parth- Great points! I agree that Valorant could have trip-ups but hopefully the medical landscape is clear. I have acquired valorant health and valorant medical domains as well. Happy to keep Salute in the running, but a few of the concerning overlapping sections of the trademark include:

- Employment counseling and placement services for persons with traumatic brain injuries, post-traumatic stress
  disorder, or a physical disability
- Physical therapy services; physical rehabilitation services; occupational therapy services; speech therapy services;
  psychological counseling; behavioral health counseling; physiological therapy services; providing physical and mental rehabilitation facilities; medical services; nursing services

Tyler- Thanks for the information and the breakdown of the strategy. I will connect with your counsel to discuss the next steps.

**Very Respectfully,**
**Ahmed 'Eddie' Qureshi**
Founder & CEO, Bettermeant Health

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Confidentiality Notice:  This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential, proprietary, and/or privileged information protected by law. If you are not the intended recipient, you may not use, copy, or distribute this restricted e-mail message or its attachments.  If you believe you have received this e-mail message in error, please contact the sender by replying to this e-mail and destroy all copies of the original message.

----------
From: **Tyler Doyle** ▮▮▮▮▮▮▮▮▮▮▮
Date: Thu, May 27, 2021 at 4:51 AM
To: Ahmed Qureshi ▮▮▮▮▮▮▮▮▮▮▮
Cc: Parth Bhakta ▮▮▮▮▮▮▮▮

Awesome guys! Cheers, and let me know if you need anything else.

----------
From: **Parth Bhakta** ██████████████
Date: Fri, May 28, 2021 at 9:54 AM
To: Tyler Doyle ██████████████████
Cc: Ahmed Qureshi ██████████████████████

Awesome!!

----------
From: **Ahmed Qureshi** ████████████████████
Date: Fri, May 28, 2021 at 9:56 AM
To: Parth Bhakta ██████████████
Cc: Tyler Doyle ████████████████

Thanks, Tyler for all of your help. I will keep you in the loop as things progress with our internal discussions and those with Trevor!

**Very Respectfully,**
**Ahmed 'Eddie' Qureshi**
Founder & CEO, Bettermeant Health
████████████████████████

Confidentiality Notice:  This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential, proprietary, and/or privileged information protected by law. If you are not the intended recipient, you may not use, copy, or distribute this restricted e-mail message or its attachments.  If you believe you have received this e-mail message in error, please contact the sender by replying to this e-mail and destroy all copies of the original message.

----------
From: **Ahmed Qureshi** ████████████████████████
Date: Tue, Dec 6, 2022 at 6:13 PM
To: Tyler Doyle ████████████████

Hey Tyler,

I hope you are doing well.

I wanted to reach out as our team is in some discussions with another entity about the use of the trademark "Valorant" which you helped us find. They are requesting any market research or grading information you had found. If you have any accessible, I would greatly appreciate it if you could share it. Thank you!

**Very Respectfully,**
**Ahmed 'Eddie' Qureshi**
Founder & CEO, Valorant Health (Formerly Bettermeant Health)
████████████████████████

Confidentiality Notice:  This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential, proprietary, and/or privileged information protected by law. If you are not the intended recipient, you may not use, copy, or distribute this restricted e-mail message or its attachments.  If you believe you have received this e-mail message in error, please contact the sender by replying to this e-mail and destroy all copies of the original message.

----------
From: **Tyler Doyle**
Date: Tue, Dec 6, 2022 at 7:11 PM
To: Ahmed Qureshi

Hey Ahmed, sorry to say that I don't have any of that kind of information. I've attached the search that the lawyer did back then.

----------
From: **Ahmed Qureshi**
Date: Mon, Mar 6, 2023 at 9:34 AM
To: Tyler Doyle

Hey tyler, pinging this back to the top of your inbox.

**Very Respectfully,**
**Ahmed 'Eddie' Qureshi**
Founder & CEO, Valorant Health (Formerly Bettermeant Health)

Confidentiality Notice:  This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential, proprietary, and/or privileged information protected by law. If you are not the intended recipient, you may not use, copy, or distribute this restricted e-mail message or its attachments.  If you believe you have received this e-mail message in error, please contact the sender by replying to this e-mail and destroy all copies of the original message.

----------
From: **Tyler Doyle**
Date: Mon, Mar 6, 2023 at 9:42 AM
To: Ahmed Qureshi

6

Hey, I don't have any information beyond this. Not sure what help I'd be in a deposition. If you can help me better understand how me meeting with a lawyer would help, I can try to find time in a week or two, but I'm completely swamped with work and personal obligations right now.

----------

From: **Ahmed Qureshi** █████████████████
Date: Mon, Mar 6, 2023 at 9:50 AM
To: Tyler Doyle ███████████████

Hey Tyler,

If you could give me a call at ████████████ that would be great. I can explain the layout to you quickly.
--

----------

From: **Ahmed Qureshi** █████████████████
Date: Mon, Mar 6, 2023 at 9:59 AM
To: Tyler Doyle ███████████████

Just as a frame of reference: The notice to appear is from the opposing counsel not us.

----------

From: **Tyler Doyle** ███████████████████
Date: Mon, Apr 3, 2023 at 10:27 AM
To: ████████████████████
Cc: ███████████████████

----------

From: **Mail Delivery Subsystem** <mailer-daemon@googlemail.com>
Date: Mon, Apr 3, 2023 at 10:27 AM
To: ████████████████

## Address not found

Your message wasn't delivered to **mtirtasapura@foxrothschild.com** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**

⚠️*This link will take you to a third-party site*

The response from the remote server was:

```
550 Invalid Recipient - https://community.mimecast.com/docs/DOC-1369#550
[YK9zIKcOPkaBdAqJG2HhIA.us411]
```



--

**Tyler Doyle**

He/Him/His (what's this?)

Naming Consultant, Founder at TBD Naming

# Exhibit 4

PTO- 1478
Approved for use through 05/31/2021. OMB 0651-0009
U.S. Patent and Trademark Office  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

**Serial Number: 90744694**
**Filing Date: 05/31/2021**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 90744694 |
| **MARK INFORMATION** | |
| *MARK | VALORANT |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | VALORANT |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Bettermeant, Inc. |
| *MAILING ADDRESS | 1169 Euclid Ave #5 |
| *CITY | Berkeley |
| *STATE (Required for U.S. applicants) | California |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 94708 |
| PHONE | 301-275-5018 |
| *EMAIL ADDRESS | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | corporation |
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION | Delaware |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | 009 |
| | Downloadable mobile application software and downloadable computer software featuring technology that allows users to access, track and analyze information in the fields of health and wellness; Downloadable mobile application software and downloadable computer software featuring technology that allows users to connect with healthcare professionals and resources; Downloadable mobile application software and downloadable computer software featuring technology that |

| | |
|---|---|
| **IDENTIFICATION** | allows users to book healthcare appointments; Downloadable mobile application software and downloadable computer software featuring technology that allows users to call, text, email, message, chat, and videoconference with healthcare professionals; Downloadable mobile application software and downloadable computer software featuring technology that allows users to integrate with existing digital healthcare programs and provide transparency and accessibility to patients and physicians; Downloadable mobile application software and downloadable computer software featuring technology that allows users to access behavioral health and cognitive therapy resources and healthcare treatment options; Downloadable mobile application software and downloadable computer software featuring technology that allows users to conduct spending analysis, stop loss analysis, access benefits information and finance healthcare plans; Downloadable mobile application software and downloadable computer software featuring technology that allows healthcare providers to charge for and be paid for healthcare-related services, diagnostic testing, medication and treatment; Downloadable mobile application software and downloadable computer software featuring technology that utilizes artificial intelligence, machine-learning, and deep learning to provide information, resources, and healthcare services to patients and providers; Downloadable mobile application software and downloadable computer software featuring technology that allows physicians and healthcare professionals to refer and recommend to patients digital content, software applications, and services, all in the fields of medicine, personal health and wellness, and nutrition; Downloadable mobile application software and downloadable computer software featuring technology that allows self-funded employers to optimize utilization of healthcare benefits and resources, namely, through digital and electronic means; Downloadable mobile application software and downloadable computer software for customer service management for others in the field of healthcare navigation; Downloadable mobile application software and downloadable computer software for insurance eligibility review, management and verification, and consultation in the health and benefits administration industry for individual subscribers; Downloadable mobile application software and downloadable computer software for information related to healthcare insurance plans for employers and individual subscribers; |
| **FILING BASIS** | SECTION 1(b) |
| **INTERNATIONAL CLASS** | 042 |
| | Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to access, track and analyze information in the fields of health and wellness; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to connect with healthcare professionals and resources; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to book healthcare appointments; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to call, text, email, message, chat, and videoconference with healthcare professionals; Providing a |

| | |
|---|---|
| *IDENTIFICATION | non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to integrate with existing digital healthcare programs and provide transparency and accessibility to patients and physicians; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to access behavioral health and cognitive therapy resources and healthcare treatment options; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to conduct spending analysis, stop loss analysis, access benefits information and finance healthcare plans; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows healthcare providers to charge for and be paid for healthcare-related services, diagnostic testing, medication and treatment; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that utilizes artificial intelligence, machine-learning, and deep learning to provide information, resources, and healthcare services to patients and providers; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows physicians and healthcare professionals to refer and recommend to patients digital content, software applications, and services, all in the fields of medicine, personal health and wellness, and nutrition; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows self-funded employers to optimize utilization of healthcare benefits and resources, namely, through digital and electronic means; Providing a non-downloadable interactive web-based Software as a Service (SaaS) for customer service management for others in the field of healthcare navigation; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform for insurance eligibility review, management and verification, and consultation in the health and benefits administration industry for individual subscribers; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform for information related to healthcare insurance plans for employers and individual subscribers; |
| FILING BASIS | SECTION 1(b) |
| INTERNATIONAL CLASS | 044 |
| *IDENTIFICATION | Providing healthcare services to patients; |
| FILING BASIS | SECTION 1(b) |
| **ATTORNEY INFORMATION** | |
| NAME | Trevor A. Caudle, Esq. |
| ATTORNEY DOCKET NUMBER | QURE |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | Trevor Caudle Law Practice, PC |
| STREET | 350 Bay Street, #100-363 |
| CITY | San Francisco |

| STATE | California |
|---|---|
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 94133 |
| PHONE | 415-859-9626 |
| EMAIL ADDRESS | trevor@trevorcaudlelaw.com |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Trevor A. Caudle, Esq. |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trevor@trevorcaudlelaw.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Standard |
| NUMBER OF CLASSES | 3 |
| APPLICATION FOR REGISTRATION PER CLASS | 350 |
| *TOTAL FEES DUE | 1050 |
| *TOTAL FEES PAID | 350 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /ANQ/ |
| SIGNATORY'S NAME | Ahmed Qureshi |
| SIGNATORY'S POSITION | President |
| SIGNATORY'S PHONE NUMBER | 3012755018 |
| DATE SIGNED | 05/31/2021 |
| SIGNATURE METHOD | Sent to third party for signature |

PTO- 1478
Approved for use through 05/31/2021. OMB 0651-0009
U.S. Patent and Trademark Office  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

### Trademark/Service Mark Application, Principal Register

**Serial Number: 90744694**
**Filing Date: 05/31/2021**

## To the Commissioner for Trademarks:

**MARK:** VALORANT (Standard Characters, see mark)
The literal element of the mark consists of VALORANT. The mark consists of standard characters, without claim to any particular font style, size, or color.

The applicant, Bettermeant, Inc., a corporation of Delaware, having an address of

    1169 Euclid Ave #5
    Berkeley, California 94708
    United States
    301-275-5018(phone)
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 009:  Downloadable mobile application software and downloadable computer software featuring technology that allows users to access, track and analyze information in the fields of health and wellness; Downloadable mobile application software and downloadable computer software featuring technology that allows users to connect with healthcare professionals and resources; Downloadable mobile application software and downloadable computer software featuring technology that allows users to book healthcare appointments; Downloadable mobile application software and downloadable computer software featuring technology that allows users to call, text, email, message, chat, and videoconference with healthcare professionals; Downloadable mobile application software and downloadable computer software featuring technology that allows users to integrate with existing digital healthcare programs and provide transparency and accessibility to patients and physicians; Downloadable mobile application software and downloadable computer software featuring technology that allows users to access behavioral health and cognitive therapy resources and healthcare treatment options; Downloadable mobile application software and downloadable computer software featuring technology that allows users to conduct spending analysis, stop loss analysis, access benefits information and finance healthcare plans; Downloadable mobile application software and downloadable computer software featuring technology that allows healthcare providers to charge for and be paid for healthcare-related services, diagnostic testing, medication and treatment; Downloadable mobile application software and downloadable computer software featuring technology that utilizes artificial intelligence, machine-learning, and deep learning to provide information, resources, and healthcare services to patients and providers; Downloadable mobile application software and downloadable computer software featuring technology that allows physicians and healthcare professionals to refer and recommend to patients digital content, software applications, and services, all in the fields of medicine, personal health and wellness, and nutrition; Downloadable mobile application software and downloadable computer software featuring technology that allows self-funded employers to optimize utilization of healthcare benefits and resources, namely, through digital and electronic means; Downloadable mobile application software and downloadable computer software for customer service management for others in the field of healthcare navigation; Downloadable mobile application software and downloadable computer software for insurance eligibility review, management and verification, and consultation in the health and benefits administration industry for individual subscribers; Downloadable mobile application software and downloadable computer software for information related to healthcare insurance plans for employers and individual subscribers;
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

International Class 042:  Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to access, track and analyze information in the fields of health and wellness; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to connect with healthcare professionals and resources; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to book healthcare appointments; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to call, text, email, message, chat, and videoconference with healthcare professionals; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to integrate with existing digital healthcare programs and provide transparency and accessibility to patients and physicians; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to access behavioral health and cognitive therapy resources and healthcare treatment options; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows users to conduct spending analysis, stop loss analysis, access benefits information and finance healthcare plans; Providing a non-downloadable interactive web-

based Software as a Service (SaaS) platform featuring technology that allows healthcare providers to charge for and be paid for healthcare-related services, diagnostic testing, medication and treatment; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that utilizes artificial intelligence, machine-learning, and deep learning to provide information, resources, and healthcare services to patients and providers; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows physicians and healthcare professionals to refer and recommend to patients digital content, software applications, and services, all in the fields of medicine, personal health and wellness, and nutrition; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform featuring technology that allows self-funded employers to optimize utilization of healthcare benefits and resources, namely, through digital and electronic means; Providing a non-downloadable interactive web-based Software as a Service (SaaS) for customer service management for others in the field of healthcare navigation; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform for insurance eligibility review, management and verification, and consultation in the health and benefits administration industry for individual subscribers; Providing a non-downloadable interactive web-based Software as a Service (SaaS) platform for information related to healthcare insurance plans for employers and individual subscribers;

Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

International Class 044: Providing healthcare services to patients;

Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

The owner's/holder's proposed attorney information: Trevor A. Caudle, Esq.. Trevor A. Caudle, Esq. of Trevor Caudle Law Practice, PC, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    350 Bay Street, #100-363
    San Francisco, California 94133
    United States
    415-859-9626(phone)
    trevor@trevorcaudlelaw.com

The docket/reference number is QURE.

Trevor A. Caudle, Esq. submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The applicant's current Correspondence Information:

    Trevor A. Caudle, Esq.

    PRIMARY EMAIL FOR CORRESPONDENCE: trevor@trevorcaudlelaw.com    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

A fee payment in the amount of $350 has been submitted with the application, representing payment for 1 class(es).

<strong>Declaration</strong>

☑ **Basis:**
    **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

    **And/Or**
    **If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as

of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /ANQ/   Date: 05/31/2021
Signatory's Name: Ahmed Qureshi
Signatory's Position: President
Signatory's Phone Number: 3012755018
Signature method: Sent to third party for signature
Payment Sale Number: 90744694
Payment Accounting Date: 05/31/2021

Serial Number: 90744694
Internet Transmission Date: Mon May 31 13:21:23 ET 2021
TEAS Stamp: USPTO/BAS-XX.XXX.XX.XXX-2021053113212314
9268-90744694-780fa347714827e2e7e21ed31a
686be92d1f2eb24a55434fca3fdbc3f7f5367a18
-CC-21213740-20210530102135473749

# Exhibit 5



Support Health <support@valoranthealth.com>

## General Support request from website
2 messages

| | |
|---|---|
| **noreply@valoranthealth.com** <noreply@valoranthealth.com><br>To: support@valoranthealth.com | Sat, Oct 8, 2022 at 10:35 PM |

User ██████@gmail.com requested help with the following message. beacuse of light issue i was disconnected and i got ban of 151 hours means 6 days . in my game my freinds were throwing .

| | |
|---|---|
| **noreply@valoranthealth.com** <noreply@valoranthealth.com><br>To: support@valoranthealth.com | Sat, Oct 8, 2022 at 10:36 PM |

User ██████@gmail.com requested help with the following message. beacuse of light issue i was disconnected and i got ban of 151 hours means 6 days . in my game my freinds were throwing . my id is PREDATOR YT #NHK